UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABE WILLIAMS, JR., | No. 2:13-cv-2052-TLN-EFB P |
| Plaintiff, | |
| v. | ORDER AND FINDINGS AND RECOMMENDATIONS |
| S. BAHADUR, et al., | |
| Defendants. | |

Plaintiff is a state prisoner proceeding without counsel in an action brought under 42 U.S.C. § 1983. His claims center on his allegation that he was disciplined for refusing an order by his supervisor to perform job tasks requiring lifting and bending in spite of medical restrictions precluding those activities. Defendants Bahadur and Cherry, the only remaining defendants in this case, have filed a motion to dismiss. ECF No. 15. For the reasons that follow, the motion must be denied.[1]

/////

/////

/////

/////

---

[1] Plaintiff and defendants have each submitted requests for judicial notice as to certain documents. *See* ECF Nos. 19, 23; *see also* ECF No. 23 ("Objections to Evidence Submitted with Plaintiff's Opposition to Defendant's Motion to Dismiss"). Those documents are not unnecessary to resolution of the motion to dismiss and the requests are denied at moot.

1

**I. The Complaint**[2]

On March 18, 2011, plaintiff was assigned to the B-Facility kitchen at Mule Creek State Prison (MCSP). ECF No. 1 at 7. He was sixty-one years of age at the time and suffered from several ailments including serious back and right leg injuries. *Id.* at 6. Upon assignment to the kitchen, he was asked to provide copies of any medical chronos[3] relating to limitations on his ability to perform physical labor. *Id.* at 7. He provided defendant Bahadur, a correctional officer, with a chrono from 2005 that listed under work limitations "no lifting over 25 pounds, no excessive bending over, kneeling, crawling or stooping"; he also provided a chrono from 2011 that stated "no excessive walking, standing or carrying over 25 pounds." *Id*. Days later, Bahadur informed plaintiff that she had discarded the chronos because she considered them outdated. *Id.* Bahadur also stated that until plaintiff obtained new chronos, she considered him fit to do any job that she assigned in the kitchen. *Id.*

Plaintiff immediately submitted a request to see his primary care physician, Dr. Hawkins. *Id.* at 8. Dr. Hawkins stated that one of the chronos discarded by Bahadur was only a few months old, that the 2005 chrono was still valid, and that Bahadur should contact him if she had any questions. *Id.* Dr. Hawkins also issued a new chrono. *Id.* Plaintiff provided Bahadur a copy of the new chrono and a copy of a 2004 chrono (which listed the same physical limitations as the 2005 chrono). *Id.* Bahadur responded that she still considered the 2004 and 2005 chronos outdated and that she needed updated chronos. *Id.* Plaintiff submitted another request to see Dr. Hawkins. *Id.*

On June 3, 2011, plaintiff learned that he was to work in the kitchen scullery that day. *Id.* at 8-9. Upon arrival, an inmate explained that plaintiff was to take meal trays (five to six at a time) to a trashcan that was half-filled with hot water and soap, knock off the food, and stack the trays so they could be run through the dishwasher's conveyor belt. *Id.* at 9. The trashcan was

---

[2] This case proceeds on plaintiff's original complaint. ECF No. 1. The following statement of facts is based entirely on the allegations in plaintiff's complaint.

[3] "A 'chrono' is a collection of informal notes taken by prison officials documenting medical orders." *Akhtar v. Mesa*, 698 F.3d 1202, 1205 n.1 (9th Cir. 2012).

approximately two feet and three inches tall. *Id.* Plaintiff complained to the inmate that explained the job assignment, then to an inmate clerk, and then to Bahadur. *Id.* Plaintiff explained to Bahadur that the job she assigned him required repetitive bending, which he was "medically prohibited from doing." *Id.* at 9-10. Plaintiff noted that he was five feet and eleven inches tall and that the repetitive bending would likely cause serious injury or great pain. *Id.* at 10. Despite knowing that other inmates had volunteered to switch jobs with plaintiff, Bahadur refused to reassign plaintiff and insisted he do the assigned job. *Id.* Plaintiff asked for permission to obtain a medical opinion from the medical department; Bahadur denied permission and ordered plaintiff to return to his housing unit and to report back to work that evening. *Id.* Plaintiff asked Bahadur if he would be disciplined if he returned to his unit, and Bahadur responded, "No." *Id.* at 10-11. "Plaintiff obeyed the order and returned to his housing unit and reported to work that evening." *Id.* at 11.

On June 9, 2011, plaintiff received a Rules Violation Report (RVR) that charged him with "refusing to perform assigned duties." *Id.* at 11-12; *see also id.* at Ex. C (the RVR indicating Bahadur was the reporting officer). Defendant Cherry acted as the senior hearing officer at a disciplinary hearing that took place the following day. *Id.* at 12. Plaintiff pled not guilty to the charge and informed Cherry of his physical limitations. *Id.* Cherry denied plaintiff's request to have Dr. Hawkins serve as a medical witness but granted plaintiff's request to have an inmate from the kitchen as a witness. *Id.* That inmate stated that plaintiff's assigned job required repetitive bending. *Id.*

Bahadur attended the disciplinary hearing and was questioned by Cherry. *Id.* Bahadur replied to one of the questions with the statement: "I want [plaintiff] removed because he has medical chronos limiting what work he can do and that causes problems for me with the other inmates, because inmates complain when they have to do jobs that other inmates don't have to do." *Id.* at 13. Cherry interjected and informed Bahadur that inmates cannot be removed from job assignments solely because of their medical problems. *Id.* Cherry then asked Bahadur six or seven additional questions, but Cherry did not include in the hearing report any of these questions

/////

3

or Bahadur's responses—nor the statement of the inmate that the job required repetitive bending. *Id.*

Cherry found plaintiff guilty of the charges and ordered thirty days loss of credits, thirty days loss of phone and yard privileges, and removal from the kitchen assignment. *Id.* at 14. Cherry's report omits all questions and responses pertaining to plaintiff's physical limitations; it documents only questions and answers supporting the finding of guilt. *Id.* Plaintiff alleges that Cherry was biased, telling plaintiff that he always believes the correctional officer where there is a dispute between an officer and an inmate and that the truth did not matter. *Id.* at 15.

On January 16, 2013, plaintiff appeared before the California Board of Parole Hearings for his eighth parole hearing. *Id.* The Board denied plaintiff parole and, according to plaintiff, "[t]he sole reason cited by BPH Presiding Commissioner John Peck to deny parole was the June 3, 2011 disciplinary infraction." *Id.* Plaintiff's next parole hearing is scheduled for 2016. *Id.* at 15. The denial of parole "is the basis for" plaintiff's claims against Bahadur and Cherry "and for which damages are sought." *Id.* at 15-16.

Upon screening the complaint, the court found that it stated a potentially cognizable Eighth Amendment deliberate indifference claim against Bahadur and a potentially cognizable Fourteenth Amendment due process claim against Cherry. ECF No. 7 at 2-3.

**II. RULE 12(b)(6) STANDARD**

In order to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-55, 562-63, 570 (2007) (stating that the 12(b)(6) standard that dismissal is warranted if plaintiff can prove no set of facts in support of his claims that would entitle him to relief "has been questioned, criticized, and explained away long enough," and that having "earned its retirement," it "is best forgotten as an incomplete, negative gloss on an accepted pleading standard"). Thus, the grounds must amount to "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* at 1965. Instead, the "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in

4

fact).” *Id.* (internal citation omitted). Dismissal may be based either on the lack of cognizable legal theories or the lack of pleading sufficient facts to support cognizable legal theories. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

The complaint's factual allegations are accepted as true. *Church of Scientology of Cal. v. Flynn*, 744 F.2d 694, 696 (9th Cir. 1984). The court construes the pleading in the light most favorable to plaintiff and resolves all doubts in plaintiff's favor. *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). General allegations are presumed to include specific facts necessary to support the claim. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

The court may disregard allegations contradicted by the complaint's attached exhibits. *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987); *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir.1998). Furthermore, the court is not required to accept as true allegations contradicted by judicially noticed facts. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (citing *Mullis v. U.S. Bankr. Ct.*, 828 F.2d 1385, 1388 (9th Cir. 1987)). The court may consider matters of public record, including pleadings, orders, and other papers filed with the court. *Mack v. South Bay Beer Distribs.*, 798 F.2d 1279, 1282 (9th Cir. 1986) (abrogated on other grounds by *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991)). "[T]he court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994). Neither need the court accept unreasonable inferences, or unwarranted deductions of fact. *Sprewell*, 266 F.3d at 988.

Pro se pleadings are held to a less stringent standard than those drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). Unless it is clear that no amendment can cure its defects, a pro se litigant is entitled to notice and an opportunity to amend the complaint before dismissal. *Lopez v. Smith*, 203 F.3d 1122, 1127-28 (9th Cir. 2000) (en banc); *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987).

/////

/////

## III. ANALYSIS

Bahadur and Cherry argue that the court should dismiss plaintiff's complaint because (1) plaintiff's claims are barred under *Heck v. Humphrey*, 512 U.S. 477 (1994), (2) both Bahadur and Cherry are entitled to qualified immunity, and (3) plaintiff's due process claim against Cherry fails as a matter of law. ECF No. 15-1 at 1.[4]

### A. *Heck*

> Federal law opens two main avenues to relief on complaints related to imprisonment: a petition for habeas corpus, 28 U.S.C. § 2254, and a complaint under the Civil Rights Act of 1871, Rev. Stat. § 1979, as amended, 42 U.S.C. § 1983. Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus; requests for relief turning on circumstances of confinement may be presented in a § 1983 action.

*Muhammad v. Close*, 540 U.S. 749 (2004) (per curiam) (citation omitted).

Relying on *Butterfield v. Bail*, 120 F.3d 1023 (9th Cir. 1997), defendants argue that plaintiff's § 1983 claims are barred by *Heck*[5] because plaintiff has not successfully challenged the RVR conviction. Their reliance on *Butterfield,* is misplaced. *Butterfield,* a Ninth Circuit opinion

/////

---

[4] Defendants also argue that "Plaintiff's claims based on the constitutionality of parole and Penal Code statutes are barred by the doctrine of collateral estoppel." ECF No. 15-1. These arguments are moot, as they concern plaintiff's claims against former defendants Beard and Shaffer. These claims were dismissed in the court's screening order, with leave to amend. ECF No. 7 at 2-3. Plaintiff elected not to amend the complaint to attempt to revive the claims, and they are therefore no longer a part of this case. ECF No. 10.

[5] In *Heck*, the Supreme Court held:

> In order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

512 U.S. at 486 (footnote omitted).

1 that predates *Muhammad*, *Wilkinson*[6], and *Skinner*[7], the three most recent Supreme Court
2 decisions addressing the issue (none of which are addressed in defendants' motion), concerned a
3 direct challenge to the denial of parole. 120 F.3d at 1024. Here, plaintiff contends Bahadur
4 assigned him a job that he could not physically perform and when he raised the issue of his
5 medical restrictions he was punished. He challenges those actions as well as the procedures
6 Cherry employed in presiding over a prison disciplinary hearing. Upon review of controlling
7 Supreme Court authority, it is clear that plaintiff's claims are not barred by *Heck*.

*Heck* is one of several cases in which the United States Supreme Court has addressed "the respective provinces of § 1983 civil rights actions and § 2254 federal habeas petitions." *Skinner v. Switzer*, 131 S. Ct. at 1298-99; *see also Preiser v. Rodriguez*, 411 U.S. 475 (1973); *Wolff v. McDonnell*, 418 U.S. 539 (1974); *Edwards v. Balisok*, 520 U.S. 641 (1997); *Muhammad*, 540 U.S. 749; *Wilkinson v. Dotson*, 544 U.S. 74. In the most recent case addressing the interplay between § 1983 and § 2254, the Supreme Court explained: "Habeas is the exclusive remedy . . . for the prisoner who seeks 'immediate or speedier release' from confinement. Where the prisoner's claim would not 'necessarily spell speedier release,' however, suit may be brought under § 1983." *Skinner*, 131 S. Ct. at 1293 (quoting *Wilkinson*, 544 U.S. at 82).

Here, habeas relief is not the exclusive remedy available to plaintiff because his complaint does not seek "immediate or speedier release" from confinement. *See* ECF No. 1 at 22-26 (requesting declaratory and injunctive relief, compensatory damages, and punitive damages, but not release from confinement); *see also Wilkinson*, 544 U.S. at 82 ("Neither respondent seeks an injunction ordering his immediate or speedier release into the community.").[8] Moreover, plaintiff

---

[6] *Wilkinson v. Dotson*, 544 U.S. 74 (2005).

[7] *Skinner v. Switzer*, ___ U.S. ___, 131 S. Ct. 1289, 1298-99 (2011).

[8] The Supreme Court elaborated in *Wilkinson*:

> Success for Dotson does not mean immediate release from confinement or a shorter stay in prison; it means at most new eligibility review, which at most will speed *consideration* of a new parole application. Success for Johnson means at most a new parole hearing at which Ohio parole authorities may, in their

may proceed under § 1983 because neither of his claims would "necessarily spell speedier release." Although the Board of Parole Hearings considers institutional behavior in determining whether a life prisoner is suitable for release on parole, the Board also considers:

> social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release.

Cal. Code Regs. tit. 15, § 2281. Plaintiff attached to his complaint a portion of the transcript from his January 16, 2013 parole hearing. That transcript makes clear that plaintiff was not denied parole solely because of the June 2011 RVR:

> Parole plans are good. I'm comfortable with that. You have engaged in institutional activities such as your self-help programming . . . . However, these are outweighed by other circumstances. Your commitment offense was very cruel and brutal manner, and your actions resulted in the death of Tequila Hawkins. You denied you committed the life crime, but accepted responsibility for not coming forward with information regarding the abuse that she was sustaining. You did talk about your unstable social history perform [sic] incarceration, your previous, not necessarily violent record but a recurring record of criminal behaviors. . . . [I]n this case we must consider whether other circumstances coupled with the above immutable circumstances would lead to the conclusion that Mr. Williams poses a continued threat to public safety; we find that he does.

ECF No. 1, Ex. E. Thus, although the Board took note of the RVR, it considered and relied upon the many other factors identified in the pertinent regulation. Accordingly, plaintiff's success in this civil rights action would not necessarily spell immediate or speedier release, and he may therefore proceed under § 1983.

---

discretion, decline to shorten his prison term.

544 U.S. at 82.

8

Surprisingly, defendants' arguments in both their moving and reply briefs fail to even mention *Muhammad*, *Wilkinson*, or *Skinner,* all of which found that the respective lawsuits were properly brought as § 1983 civil rights actions. *See Muhammad*, 540 U.S. at 754-55 ("His § 1983 suit challenging this action could not therefore be construed as seeking a judgment at odds with his conviction or with the State's calculation of time to be served in accordance with the underlying sentence."); *Wilkinson*, 544 U.S. at 82 (finding challenges to the state procedures used to deny parole eligibility and parole suitability "are cognizable under § 1983"); *Skinner*, 131 S. Ct. at 1298 ("Skinner has properly invoked § 1983. Success in his suit for DNA testing would not 'necessarily imply' the invalidity of his conviction. While test results might prove exculpatory, that outcome is hardly inevitable; . . . results might prove inconclusive or they might further incriminate Skinner."). While defendants assert here that "the gravamen of Plaintiff's complaint calls into question the validity of the parole board's decision," ECF No. 15-1 at 7, even if that is true, it does not follow that habeas relief is the only remedy available to plaintiff. *See Wilkinson*, 544 U.S. at 76 (explaining that plaintiffs need not "seek relief exclusively under the federal habeas corpus statutes"). Success on plaintiff's claims would not necessarily spell speedier release and therefore his § 1983 claims against Bahadur and Cherry are not barred by *Heck*.

**B. Plaintiff's Due Process Claim (against Defendant Cherry)**

Cherry contends that plaintiff's due process claim "fails as a matter of law because there is some evidence in the record supporting Cherry's finding" at the disciplinary hearing. ECF No. 15-1 at 13. In *Superintendent v. Hill*, 472 U.S. 445, 455 (1985), the Supreme Court held that "the requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board . . . ." As the Ninth Circuit has explained:

> "Some evidence" review requires us to ask only whether there is any evidence in the record that could support the conclusion. This test is minimally stringent. Accordingly, we do not examine the entire record, independently assess witness credibility, or reweigh the evidence. Evidence only must bear some indicia of reliability to be considered "some evidence." Moreover, evidence may

9

>qualify as "some evidence," even if it does not logically preclude[ ] any conclusion but the one reached.

*Castro v. Terhune*, 712 F.3d 1304, 1314 (9th Cir. 2013) (citations and some internal quotation marks omitted).

As previously noted, plaintiff included with his complaint a copy of Cherry's report. *See* ECF No. 1, Ex. C. The report notes three items of evidence, including plaintiff's "partial admission of guilt." *Id.* Cherry found plaintiff guilty of "Refus[ing] to Perform Assigned Duties," based in part on plaintiff's statement "I know I could not do it." *Id.* This evidence "clearly satisfies the low 'some evidence' standard." *Castro*, 712 F.3d at 1314.

The conclusion that "some evidence" supported the disciplinary finding at issue here does not end the procedural due process inquiry, however. Procedural due process requires more than just an evidentiary basis for the ultimate discipline:

>Where a prison disciplinary hearing may result in the loss of good time credits, . . . the inmate must receive: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.

*Hill*, 472 U.S. at 454. In addition, due process requires an unbiased decisionmaker. *Wolff v. McDonnell*, 418 U.S. 539, 571 (1974) (a biased decisionmaker may "present[] such a hazard of arbitrary decisionmaking" that she or he violates an inmate's procedural due process rights). As defendants recognize elsewhere in their brief, plaintiff does not simply argue that defendant Cherry violated his procedural due process rights by finding him guilty absent "some evidence." *See* ECF No. 15-1 at 12. Plaintiff also alleges that Cherry deprived him of due process by refusing to call Dr. Hawkins or another medical witness to testify to plaintiff's ability (or inability) to work the scullery position and by being biased in favor of Bahadur. ECF No. 1 at 12-15. Whether these allegations are adequate to state a claim is not clear, defendants' motion fails

/////

/////

10

to address them. Accordingly, Cherry's request to dismiss the procedural due process claims against him must be denied.[9]

### C. Plaintiff's Eighth Amendment Claim (against Defendant Bahadur)

Bahadur argues that she is entitled to qualified immunity on plaintiff's claim against her, "because she acted reasonably in relying on the chronos presented by Plaintiff when she reported him for a rules violation. . . ." ECF No. 15-1 at 8. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Resolving the defense of qualified immunity involves a two-step process; the court must determine (1) whether the plaintiff has alleged or shown a violation of a constitutional right, and (2) whether the right at issue was clearly established at the time of defendant's alleged misconduct. *Pearson*, 555 U.S. at 232 (citing *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001)). "Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right." *Pearson*, 555 U.S. at 232. To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). Extreme deprivations are required to make out a conditions-of-confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992). "Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal

---

[9] Defendant Cherry also argues that he is entitled to qualified immunity because the complaint shows that plaintiff received advance written notice of the disciplinary hearing and a statement of the reasons for the disciplinary action taken. ECF No. 15-1 at 12. Thus, Cherry argues, the complaint shows that no constitutional violation occurred. This argument ignores plaintiff's allegations of being denied his request for a medical witness and of Cherry's bias. Accordingly, the court cannot grant Cherry's request for qualified immunity at this time.

11

1    safety. The circumstances, nature, and duration of a deprivation of these necessities must be
2    considered in determining whether a constitutional violation has occurred. The more basic the
3    need, the shorter the time it can be withheld." *Johnson v. Lewis*, 217 F.3d 726, 731-732 (9th Cir.
4    2000) (quotations and citations omitted).

5    To succeed on an Eighth Amendment claim predicated on the denial of, or interference
6    with, medical care, a plaintiff must establish that: (1) he had a serious medical need and (2) the
7    defendant's response to that need was deliberately indifferent. *Jett v. Penner*, 439 F.3d 1091,
8    1096 (9th Cir. 2006); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A serious medical
9    need exists if the failure to treat the condition could result in further significant injury or the
10   unnecessary and wanton infliction of pain. *Jett*, 439 F.3d at 1096. A deliberately indifferent
11   response may be shown by the denial, delay or intentional interference with medical treatment or
12   by the way in which medical care was provided. *Hutchinson v. United States*, 838 F.2d 390, 394
13   (9th Cir. 1988). To act with deliberate indifference, a prison official must both be aware of facts
14   from which the inference could be drawn that a substantial risk of serious harm exists, and he
15   must also draw the inference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

16   Thus, a defendant will be liable for violating the Eighth Amendment if he knows that
17   plaintiff faces "a substantial risk of serious harm and disregards that risk by failing to take
18   reasonable measures to abate it." *Id.* at 847. "[I]t is enough that the official acted or failed to act
19   despite his knowledge of a substantial risk of serious harm." *Id*. at 842.

20   In addition, at the time of the incident underlying this action (2011), it was established
21   that, "[r]egardless of how a prisoner obtains his work, once he is employed and not in a position
22   to direct his own labor, his supervisors are not free to visit cruel and unusual punishments upon
23   him." *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). Just as the plaintiff in
24   *Morgan* "did not waive his Eighth and Fourteenth Amendment rights by taking a job in the print
25   shop," *id.* at 1045, plaintiff did not do so here by taking the job in the scullery. Rather, defendant
26   Bahadur could not, consistent with the Constitution, compel plaintiff to perform labor that was
27   beyond his strength, endangered his life, caused him undue pain, or subjected him to a serious
28   risk of harm of which she was aware. *Id.* Thus, the court must evaluate whether plaintiff's

1  allegations, if true, establish that defendant Bahadur violated plaintiff's clearly-established right
2  to be free from deliberate indifference to his physical well-being while working his prison job.
3  Bahadur presents four arguments supporting her claim of qualified immunity, which the court
4  will address in turn.

5  First, Bahadur argues that "it is not clearly established that assigning an inmate to a job,
6  and then reporting him for refusal to work, violates the Eighth Amendment, where the inmate
7  admits he possessed no valid work restriction based on medical needs on the date of the
8  assignment." ECF No. 15-1 at 9. This argument is premised on a misrepresentation of the
9  complaint. Contrary to Bahadur's assertion, plaintiff has not admitted that he possessed no valid
10 work restriction at the time she filed the disciplinary report. Instead, plaintiff alleges that he
11 presented a 2005 document listing as his work limitations "no lifting over 25 pounds, no
12 excessive bending over, kneeling, crawling or stooping." ECF No. 1 at 7. Plaintiff alleges that
13 Bahadur took and discarded this document, considering it outdated. *Id.* Plaintiff then told
14 Bahadur that the document was still valid, obtained an appointment with his physician, Dr.
15 Hawkins, who confirmed that the discarded document was still valid, and told Bahadur to contact
16 Dr. Hawkins if she questioned his physical limitations as listed on that document. *Id.* at 7-8. He
17 provided Bahadur with a 2004 document listing the same limitations as the 2005 document,
18 which he has also attached to his complaint. *Id.* at 7-8, 28. It is this 2004 document which states
19 that it expires 12 months from the date of issue; whether the 2005 document plaintiff provided to
20 Bahadur said the same thing remains an open question, as the document is not attached to the
21 complaint. In sum, plaintiff alleges that he told Bahadur that the 2005 document remained valid
22 and referred her to his physician to confirm that fact. Plaintiff has in no way "admitted" that he
23 possessed no valid work restriction at the time of the incident in question.

24 Second, Bahadur argues that she "was not required to believe what Plaintiff stated
25 regarding his condition, particularly when Plaintiff presented [her] with chronos that were out-of-
26 date or did not list 'bending at the waist' as a restriction." ECF No. 15-1 at 10. Again, Bahadur
27 misrepresents the allegations of the complaint. As noted above, plaintiff presented her with
28 chronos which he contends were up-to-date. Whether the evidence will bear out plaintiff's

13

1   assertions or defendant's is a question for later proceedings. On this motion, the court must take
2   as true plaintiff's assertions. As further noted above, Bahadur *was* required to respond reasonably
3   to plaintiff's presentation of evidence that he had a serious medical need which rendered him
4   unable to work the position assigned. Unlike *Knight v. Wiseman*, the case relied on by
5   defendants, plaintiff here claims that he *did* have valid work restrictions issued by medical staff
6   that he presented to defendant Bahadur. 590 F.3d 458, 464-65 (7th Cir. 2009) (upholding a grant
7   of summary judgment to defendants who swore that they did not know of the plaintiff's injuries
8   nor instruct him to keep working after they learned of them). Plaintiff has adequately alleged that
9   Bahadur's response (issuing discipline for failure to work a job he could not safely perform) was
10  not reasonable.

11          Third, Bahadur argues that she should be granted qualified immunity because she "did not
12  force plaintiff to work once he refused the assignment." ECF No. 15-1 at 10. Instead, accepting
13  the allegations of the complaint as true, Bahadur presented plaintiff with this dilemma: either to
14  perform work that was likely to exacerbate his injuries (and violate his constitutional rights) or
15  face discipline (with attendant loss of privileges and potential impact on parole prospects).
16  Defendants provide no authority from which the court can conclude that, where a defendant
17  presents the plaintiff with the choice of either participating in an act that would violate his
18  constitutional rights or face adverse action, no constitutional violation occurs if the plaintiff elects
19  to face the adverse action to avoid the unconstitutional harm. On the allegations of the complaint,
20  plaintiff has stated a claim that Bahadur was aware of his serious medical need not to perform the
21  work of the scullery position, ordered him to do so anyway, and plaintiff suffered harm as a result
22  (the disciplinary action). Absent any authority, the court will not recommend dismissing
23  plaintiff's Eighth Amendment claim simply because he elected not to injure himself by
24  complying with Bahadur's orders.

25          Lastly, Bahadur argues that her conduct was reasonable because the documents plaintiff
26  provided to her were either outdated or did not list bending at the waist as a restriction. ECF No.
27  15-1 at 11. Again, this argument is premised on the misrepresentation of plaintiff's allegations
28  discussed above and must therefore be rejected.

**D. Plaintiff's Retaliation Claim (against Defendant Bahadur)**

In reviewing the complaint for purposes of the instant motion, the court has discovered that plaintiff's allegations support a cognizable First Amendment retaliation claim against defendant Bahadur for imposing discipline in response to plaintiff's protests about his work assignment. ECF No. 1 at 10-11; s*ee Smith v. Villapando*, 286 F. App'x 682, 685-86 (11th Cir. 2008) (holding that an inmate had a First Amendment right to protest being given a cellmate); *Peters v. Woodbury County*, 979 F. Supp. 2d 901, 967-69 (N.D. Iowa 2013) (holding that a prisoner had a First Amendment right to protest his treatment); *Gossett v. Stewart*, No. CV 08-2120-PHX-DGC (ECV), 2012 U.S. Dist. LEXIS 34374, at *42-45 (D. Ariz. Mar. 13, 2012) (holding that a prisoner's oral protests about a move were protected speech). The court incorrectly failed to include this claim in identifying the complaint's cognizable claims in the initial screening order that issued on May 21, 2014. ECF No. 7. To correct this oversight, the court now finds that the complaint states a First Amendment retaliation claim against defendant Bahadur that is cognizable for the limited purposes of § 1915A screening. Defendant Bahadur shall respond to this claim within 21 days of the date of this order.

**IV. ORDER AND RECOMMENDATION**

It is hereby ORDERED that, for purposes of 28 U.S.C. § 1915A screening, the complaint states a cognizable retaliation claim against defendant Bahadur. Defendant Bahadur shall respond to this claim within 21 days of the date of this order.

It is further RECOMMENDED that defendants' September 30, 2014 motion to dismiss (ECF No. 15) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections

/////

/////

within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: May 7, 2015.

          EDMUND F. BRENNAN
          UNITED STATES MAGISTRATE JUDGE

16