1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11  ABE WILLIAMS, JR.,                          No.  2:13-cv-2052-TLN-EFB P

12              Plaintiff,

13       v.                                      ORDER AND FINDINGS AND
                                                 RECOMMENDATIONS
14  S. BAHADUR, et al.,

15              Defendants.

16

17          Plaintiff is a state prisoner proceeding without counsel in an action brought under 42

18  U.S.C. § 1983.  He claims that he was disciplined for refusing an order by his supervisor to

19  perform job tasks requiring lifting and bending in spite of medical restrictions precluding those

20  activities.  Defendant Bahadur seeks dismissal of plaintiff's retaliation claim against her.[1]  ECF

21  No. 27.  For the reasons that follow, the motion to dismiss should be granted.

22  /////

23  /////

24  /////

25  /////

26  _____

27       [1] Defendants Bahadur and Cherry also move to strike plaintiff's reply to defendants'
    response to plaintiff's objections to findings and recommendations issued May 26, 2015 (ECF
    No. 26).  ECF No. 32.  That motion is denied as it has been rendered moot by the district judge's
28  adoption of the findings and recommendations on August 10, 2015.  ECF No. 37.

I.     **The Complaint**[2]

On March 18, 2011, plaintiff was assigned to the B-Facility kitchen at Mule Creek State Prison (MCSP). ECF No. 1 at 7. He was sixty-one years old at the time and suffered from several ailments including serious back and right leg injuries. *Id.* at 6. Upon assignment to the kitchen, he was asked to provide copies of any medical chronos[3] relating to limitations on his ability to perform physical labor. *Id.* at 7. He provided defendant Bahadur, a correctional officer, with a chrono from 2005 that listed under work limitations "no lifting over 25 pounds, no excessive bending over, kneeling, crawling or stooping"; he also provided a chrono from 2011 that stated "no excessive walking, standing or carrying over 25 pounds." *Id.* Days later, Bahadur informed plaintiff that she had discarded the chronos because she considered them outdated. *Id.* Bahadur also stated that until plaintiff obtained new chronos, she considered him fit to do any job that she assigned in the kitchen. *Id.*

Plaintiff immediately submitted a request to see his primary care physician, Dr. Hawkins. *Id.* at 8. Dr. Hawkins stated that one of the chronos discarded by Bahadur was only a few months old, that the 2005 chrono was still valid, and that Bahadur should contact him if she had any questions. *Id.* Dr. Hawkins also issued a new chrono. *Id.* Plaintiff provided Bahadur a copy of the new chrono and a copy of a 2004 chrono (which listed the same physical limitations as the 2005 chrono). *Id.* Bahadur responded that she still considered the 2004 and 2005 chronos outdated and that she needed updated chronos. *Id.* Plaintiff submitted another request to see Dr. Hawkins. *Id.*

On June 3, 2011, plaintiff learned that he was to work in the kitchen scullery that day. *Id.* at 8-9. Upon arrival, an inmate explained that plaintiff was to take meal trays (five to six at a time) to a trashcan that was half-filled with hot water and soap, knock off the food, and stack the trays so they could be run through the dishwasher's conveyor belt. *Id.* at 9. The trashcan was

---

[2] This case proceeds on plaintiff's original complaint. ECF No. 1. The following statement of facts is based entirely on the allegations in plaintiff's complaint.

[3] "A 'chrono' is a collection of informal notes taken by prison officials documenting medical orders." *Akhtar v. Mesa*, 698 F.3d 1202, 1205 n.1 (9th Cir. 2012).

1    approximately two feet and three inches tall.  *Id.*  Plaintiff complained to the inmate that

2    explained the job assignment, then to an inmate clerk, and then to Bahadur.  *Id.*  Plaintiff

3    explained to Bahadur that the job she assigned him required repetitive bending, which he was

4    "medically prohibited from doing."  *Id.* at 9-10.  Plaintiff noted that he was five feet and eleven

5    inches tall and that the repetitive bending would likely cause serious injury or great pain.  *Id.* at

6    10.  Despite knowing that other inmates had volunteered to switch jobs with plaintiff, Bahadur

7    refused to reassign plaintiff and insisted he do the assigned job.  *Id.*  Plaintiff asked for permission

8    to obtain a medical opinion from the medical department; Bahadur denied permission and ordered

9    plaintiff to return to his housing unit and to report back to work that evening.  *Id.*  Plaintiff asked

10   Bahadur if he would be disciplined if he returned to his unit, and Bahadur responded, "No."  *Id.* at

11   10-11.  "Plaintiff obeyed the order and returned to his housing unit and reported to work that

12   evening."  *Id.* at 11.

13        On June 9, 2011, plaintiff received a Rules Violation Report (RVR) that charged him with

14   "refusing to perform assigned duties."  *Id.* at 11-12; *see also id.* at Ex. C (the RVR indicating

15   Bahadur was the reporting officer).  Defendant Cherry acted as the senior hearing officer at a

16   disciplinary hearing that took place the following day.  *Id.* at 12.  Plaintiff pled not guilty to the

17   charge and informed Cherry of his physical limitations.  *Id.*  Cherry denied plaintiff's request to

18   have Dr. Hawkins serve as a medical witness but granted plaintiff's request to have an inmate

19   from the kitchen as a witness.  *Id.*  That inmate stated that plaintiff's assigned job required

20   repetitive bending.  *Id.*

21        Bahadur attended the disciplinary hearing and was questioned by Cherry.  *Id.*  Bahadur

22   replied to one question stating:  "I want [plaintiff] removed because he has medical chronos

23   limiting what work he can do and that causes problems for me with the other inmates, because

24   inmates complain when they have to do jobs that other inmates don't have to do."  *Id.* at 13.

25   Cherry stopped the proceedings and informed Bahadur that inmates cannot be removed from job

26   assignments solely because of their medical problems.  *Id.*  Cherry then asked Bahadur six or

27   seven additional questions, but Cherry did not include in the hearing report any of these questions

28   /////

or Bahadur's responses—nor the statement of the inmate that the job required repetitive bending. *Id.*

Cherry found plaintiff guilty of the charges and ordered thirty days loss of credits, thirty days loss of phone and yard privileges, and removal from the kitchen assignment. *Id.* at 14. Cherry's report omits all questions and responses pertaining to plaintiff's physical limitations; it documents only questions and answers supporting the finding of guilt. *Id.* Plaintiff alleges that Cherry was biased, telling plaintiff that he always believes the correctional officer where there is a dispute between an officer and an inmate and that the truth did not matter. *Id.* at 15.

On January 16, 2013, plaintiff appeared before the California Board of Parole Hearings for his eighth parole hearing. *Id.* The Board denied plaintiff parole and, according to plaintiff, "[t]he sole reason cited by BPH Presiding Commissioner John Peck to deny parole was the June 3, 2011 disciplinary infraction." *Id.* Plaintiff's next parole hearing is scheduled for 2016. *Id.* at 15. The denial of parole "is the basis for" plaintiff's claims against Bahadur and Cherry "and for which damages are sought." *Id.* at 15-16.

Upon screening the complaint, the court found that it stated a potentially cognizable Eighth Amendment deliberate indifference claim against Bahadur and a potentially cognizable Fourteenth Amendment due process claim against Cherry. ECF No. 7 at 2-3.

## II.     Rule 12(b)(6) Standard

In order to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-55, 562-63, 570 (2007) (stating that the 12(b)(6) standard that dismissal is warranted if plaintiff can prove no set of facts in support of his claims that would entitle him to relief "has been questioned, criticized, and explained away long enough," and that having "earned its retirement," it "is best forgotten as an incomplete, negative gloss on an accepted pleading standard"). Thus, the grounds must amount to "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* at 1965. Instead, the "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in

4

1   fact)." *Id.* (internal citation omitted).  Dismissal may be based either on the lack of cognizable

2   legal theories or the lack of pleading sufficient facts to support cognizable legal theories.

3   *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

4          The complaint's factual allegations are accepted as true.  *Church of Scientology of Cal. v.*

5   *Flynn*, 744 F.2d 694, 696 (9th Cir. 1984).  The court construes the pleading in the light most

6   favorable to plaintiff and resolves all doubts in plaintiff's favor.  *Parks Sch. of Bus., Inc. v.*

7   *Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  General allegations are presumed to include

8   specific facts necessary to support the claim.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561

9   (1992).

10         The court may disregard allegations contradicted by the complaint's attached exhibits.

11  *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987); *Steckman v. Hart Brewing,*

12  *Inc.*, 143 F.3d 1293, 1295-96 (9th Cir.1998).  Furthermore, the court is not required to accept as

13  true allegations contradicted by judicially noticed facts.  *Sprewell v. Golden State Warriors*, 266

14  F.3d 979, 988 (9th Cir. 2001) (citing *Mullis v. U.S. Bankr. Ct.*, 828 F.2d 1385, 1388 (9th Cir.

15  1987)).  The court may consider matters of public record, including pleadings, orders, and other

16  papers filed with the court.  *Mack v. South Bay Beer Distribs.*, 798 F.2d 1279, 1282 (9th Cir.

17  1986) (abrogated on other grounds by *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104

18  (1991)).  "[T]he court is not required to accept legal conclusions cast in the form of factual

19  allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v.*

20  *Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).  Neither need the court accept

21  unreasonable inferences, or unwarranted deductions of fact.  *Sprewell*, 266 F.3d at 988.

22         Pro se pleadings are held to a less stringent standard than those drafted by lawyers.

23  *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).  Unless it is clear that no amendment can cure its

24  defects, a pro se litigant is entitled to notice and an opportunity to amend the complaint before

25  dismissal.  *Lopez v. Smith*, 203 F.3d 1122, 1127-28 (9th Cir. 2000) (en banc); *Noll v. Carlson*,

26  809 F.2d 1446, 1448 (9th Cir. 1987).

27  /////

28  /////

5

### III.     Analysis

Bahadur argues that the court should dismiss plaintiff's retaliation claim because (1) plaintiff's claims are barred under *Heck v. Humphrey*, 512 U.S. 477 (1994), (2) the complaint fails to state a viable retaliation claim; and (3) Bahadur is entitled to qualified immunity.  ECF No. 27.  The *Heck* argument was considered and rejected by this court in response to defendant's previous motion to dismiss.  ECF No. 24 at 6-9; ECF No. 37.  It must again be rejected for the same reason stated in the prior findings and recommendations:  plaintiff's claim, if successful, would not necessarily mean that his release from prison would be accelerated.  ECF No. 24 at 6-9, adopted by ECF No. 37.  The undersigned will accordingly limit discussion to defendant's remaining arguments.

### A.  <u>The Complaint Adequately Alleges Conduct Protected By the First Amendment</u>

To state a viable claim for retaliation in violation of the First Amendment, a plaintiff must allege facts that, if true, would establish: (1) that a state actor took an adverse action against the plaintiff (2) because of (3) the plaintiff's protected conduct, and that the action (4) chilled the plaintiff's exercise of First Amendment rights (or would have chilled a person of ordinary firmness) and (5) did not advance a legitimate correctional goal.  *Rhodes v. Robinson*, 408 F.3d 559, 567-69 (9th Cir. 2005).

Defendant Bahadur argues that plaintiff's refusal to perform the work she assigned him was not conduct protected by the First Amendment because it violated California Code of Regulations, title 15, § 3041(a)[4], citing various cases.  None of the cited cases are controlling, however, and none address a situation factually similar to the one presented by plaintiff's complaint.  In *Smith v. Mosley*, 532 F.3d 1270 (11th Cir. 2008), the plaintiff made statements that were determined to have been false and insubordinate in violation of two prison regulations.  He alleged that his discipline for making the statements was retaliation in violation of the First Amendment, but he did not claim that the prison regulations could not validly apply to the

---

[4] This regulation provides: "Inmates must perform assigned tasks diligently and conscientiously.  Inmates must not pretend illness, or otherwise evade attendance or avoid performance in assigned work, education and programs, or encourage others to do so."

1   statements.  *Id.* at 1277 & n.19.  The U.S. Court of Appeals for the Eleventh Circuit concluded

2   that the statements were not protected conduct because they violated legitimate (and legitimately-

3   applied) prison regulations.  *Id.* at 1277.

4          In contrast, plaintiff here alleges that his conduct did not violate § 3041(a) and that the

5   administrative hearing in which he was found to have violated that regulation was essentially a

6   sham.  ECF No. 1 at 11-15 (alleging that the hearing officer defendant Cherry conducted the

7   hearing in an unfair manner and told plaintiff that whenever there was a dispute between an

8   officer and an inmate, Cherry always went with the officer's version of events).  In addition,

9   plaintiff alleges that he was disciplined for protesting defendant's attempt to force plaintiff to

10  perform work that would have violated his Eighth Amendment rights.  In essence, the allegation

11  here is that Bahadur pretextually applied § 3041(a) to plaintiff in retaliation for his protest that

12  she (Bahadur) had assigned him a job which Bahadur had already been informed he was not

13  medically capable of performing.  The Eleventh Circuit was not presented with such facts in

14  *Smith*.

15         Defendant next cites *Watkins v. Kasper*, 599 F.3d 791 (7th Cir. 2010).  There, the court

16  held that "confrontational" and "disorderly" manner in which the plaintiff presented his grievance

17  "removed" the grievance from the First Amendment's protection.  *Id.* at 798-99.  As in *Smith*, the

18  plaintiff  in *Watkins* did not dispute that the manner in which he made his protest violated a prison

19  regulation against disorderly conduct.  *Id.* at 799.  Again, plaintiff here has not conceded as much

20  and it remains an issue to be decided in this case whether plaintiff was legitimately found in

21  violation of § 3041(a).  Moreover, there is nothing in the complaint suggesting that plaintiff

22  protested the work assignment in a confrontational, disorderly, or otherwise offensive manner.

23         Defendant relies next on *Smith v. Campbell*, 250 F.3d 1032 (6th Cir. 2001), another case

24  in which the manner of the plaintiff's protests violated prison regulations "because of his

25  aggressive attitudes . . . and his attempts to intimidate staff members."  *Id.* at 1037.  This case is

26  of limited relevance here for the same reasons discussed above; that is, plaintiff does not allege

27  any facts showing that his protest was disorderly and he disputes whether his refusal to work

28  legitimately violated § 3041(a).

Lastly, defendant relies on *Brown v. Lirios*, 391 F. App'x 539 (7th Cir. 2010), in which the plaintiff alleged that officials had retaliated against him because he refused to comply with a restitution payment plan. *Id.* at 541-42. The Court of Appeals concluded that the plaintiff's refusal to comply with the payment plan was not protected conduct because the regulation providing for the payment plan was legitimate. *Id.* Unlike the present case, there was no allegation that the regulation was applied in an unconstitutional manner to the plaintiff.

This case is more in line with *Smith v. Villapando*, 286 F. App'x 682 (11th Cir. 2008). There, the plaintiff alleged that defendants had retaliated against him by filing a disciplinary report for disorderly conduct after he verbally protested when they attempted to assign him a roommate. *Id.* at 684. The Court of Appeals reversed the district court's dismissal of the claim, concluding that the plaintiff had adequately alleged that he engaged in protected conduct (his verbal protest of defendants' actions). *Id.* at 685. Moreover, his conduct did not become unprotected simply because he had been found guilty of disorderly conduct in the resulting prison disciplinary hearing, because the plaintiff did not admit to the disorderly conduct. *Id.* at 685-86.

As in *Smith,* although plaintiff did not prevail, he disputed the charge against him and he had every right to do so free of retaliation. Plaintiff has alleged that he exercised his First Amendment right to verbally protest Bahadur's job assignment, and he has not admitted that his conduct violated § 3041(a). Accordingly, his retaliation claim should not be dismissed on the basis of the disciplinary sanction. Plaintiff has adequately alleged that defendant disciplined him for engaging in protected conduct.

### B. Defendant Should Be Afforded Qualified Immunity

Bahadur argues that she is entitled to qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Resolving the defense of qualified immunity involves a two-step process; the court must determine (1) whether the plaintiff has alleged or shown a violation of a constitutional right, and (2) whether the right at issue was clearly established at the

1    time of defendant's alleged misconduct.  *Pearson*, 555 U.S. at 232 (citing *Saucier v. Katz*, 533

2    U.S. 194, 201-02 (2001)).  These steps may be analyzed in any order.  *Id.* at 236.

3         "Qualified immunity is applicable unless the official's conduct violated a clearly

4    established constitutional right."  *Pearson*, 555 U.S. at 232.  To be clearly established "[t]he

5    contours of the right must be sufficiently clear that a reasonable official would understand that

6    what he is doing violates that right."  *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

7    "[E]xisting precedent must have placed the statutory or constitutional question beyond debate."

8    *Ashcroft v. al-Kidd*, 563 U.S. __, 131 S. Ct. 2074, 2083 (2011); *see also Clement v. Gomez*, 298

9    F.3d 898, 906 (9th Cir. 2002) ("The proper inquiry focuses on . . . whether the state of the law [at

10   the relevant time] gave 'fair warning' to the officials that their conduct was unconstitutional.")

11   (quoting *Saucier*, 533 U.S. at 202).

12        Here, there is no doubt that in general retaliation for an inmate's exercise of First

13   Amendment rights clearly violates the First Amendment.  But the inquiry is more focused than

14   that.  It does not appear from the case law that, at the time of the incident underlying this action

15   (2011), it was firmly established that a prisoner's verbal protest (as opposed to a written

16   grievance or lawsuit) constituted conduct protected by the First Amendment.  As was recently

17   well-stated by another magistrate judge of this court:

18        To date, neither the Supreme Court nor the Ninth Circuit has held that mere oral
          complaints by a prisoner can form the basis of a retaliation claim within the prison
19        context.  *See, e.g., Teahan v. Wilhelm*, No. 06cv15 JM (PCL), 2007 U.S. Dist.
          LEXIS 97539, 2007 WL 5041440 at *9 (S.D. Cal. Dec. 21, 2007) ("the Ninth
20        Circuit has never had cause to determine whether oral complaints concerning a
          prisoner's individual circumstances are protected by the First Amendment.").  In
21        addition, although some unpublished decisions from this court have recognized
          that a prisoner's oral complaint constitute such protected conduct, there is by no
22        means "a robust 'consensus of cases of persuasive authority'" so recognizing.  *al-
          Kidd*, 131 S. Ct. at 2084.  *Compare West*, 2014 U.S. Dist. LEXIS 25537, 2014
23        WL 794335 at *5-*6 (protected speech includes a prisoner's verbal expression of
          an intent to submit a formal written grievance); *Hackworth*, 2011 U.S. Dist.
24        LEXIS 5476, 2011 WL 1811035 at *1 (rejecting defendant's argument that
          prisoner's verbal objections to a prison policy during housing classification
25        committee meeting with prison staff was not protected by the First Amendment
          because the inmate had not filed a written grievance); *Uribe*, 2011 U.S. Dist.
26        LEXIS 133, 2011 WL 9640 at *12 (prisoner's attempt to report a prison official's
          misconduct, either "verbally or in writing, constitutes speech or conduct entitled
27        to First Amendment protection."), *with Johnson v. Carroll*, No. 2:08-cv-1494
          KJN P, 2012 U.S. Dist. LEXIS 79380, 2012 WL 2069561 at *34 (E.D. Cal. June
28        7, 2012) (a prisoner's verbal statements and challenges made to defendant

9

1   incident to challenged strip search fall outside of First Amendment protection and
    therefore plaintiff failed to state a First Amendment retaliation claim). *See also*
2   *McElroy v. Lopac*, 403 F.3d 855, 858-59 (7th Cir. 2005) (to support a retaliation
    claim a prisoner's speech "must relate to a public concern and not just a personal
3   matter to receive First Amendment protection").

4

5   *Ahmed v. Ringler*, No. 2:13-cv-1050 MCE DAD P, 2015 U.S. Dist. LEXIS 14139, at *16-18

6   (E.D. Cal. Feb. 5, 2015).  Because it was not well-established in 2011 that a verbal protest

7   constituted conduct protected by the First Amendment, plaintiff's retaliation claim against

8   defendant Bahadur, which is based solely on his verbal protest of her job assignment, must be

9   dismissed on the basis of qualified immunity.

10  **IV.     Order and Recommendation**

11          Accordingly, it is hereby ORDERED that defendants' July 2, 2015 motion to strike (ECF

12  No. 32) is denied as moot.

13          Further, it is RECOMMENDED that defendant Bahadur's May 9, 2015 motion to dismiss

14  plaintiff's retaliation claim (ECF No. 27) be granted.

15          These findings and recommendations are submitted to the United States District Judge

16  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

17  after being served with these findings and recommendations, any party may file written

18  objections with the court and serve a copy on all parties.  Such a document should be captioned

19  "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections

20  within the specified time may waive the right to appeal the District Court's order.  *Turner v.*

21  *Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

22  DATED:  February 25, 2016.

23                                          EDMUND F. BRENNAN

24                                          UNITED STATES MAGISTRATE JUDGE

25

26

27

28

                                          10